**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001923
13-JAN-2015
08:17 AM**

NO. CAAP-13-0001923

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
RICHARD GARVIS, Defendant-Appellant,
and
GINA T. DEVINE, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 11-1-0488)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Defendant-Appellant Richard A. Garvis (**Garvis**) appeals
from the June 17, 2013 "Judgment of Conviction and Sentence"
(**Judgment**) entered in the Circuit Court of the First Circuit[1]
(**circuit court**).  Garvis was found guilty of disorderly conduct
in violation of Hawaii Revised Statutes (**HRS**) § 711-1101(1)(c)
and (3) (1993 and Supp. 2013).[2]

---

[1]     The Honorable Randal K.O. Lee presided.

[2]     HRS § 711-1101 provides, in relevant part:

**§711-1101 Disorderly conduct.**  (1) A person commits the
offense of disorderly conduct if, with intent to cause physical
inconvenience or alarm by a member or members of the public, or
recklessly creating a risk thereof, the person:

. . . .

(c)    Subjects another person to offensively coarse behavior
or abusive language which is likely to provoke a
violent response;

. . . .

(continued...)

Garvis contends that the indictment was substantively defective and thus the circuit court lacked subject matter jurisdiction over the case, and that his conviction was not supported by substantial evidence.

## I. BACKGROUND

Garvis was charged with disorderly conduct as follows:[3]

> On or about the 23rd day of March, 2011, in the City and County of Honolulu, State of Hawaiʻi, [Garvis], persisting in disorderly conduct after reasonable warning or request to desist, and with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, did subject another person to offensively coarse behavior or abusive language which is likely to provoke a violent response, thereby committing the offense of Disorderly Conduct, a petty misdemeanor, in violation of Section 711-1101(1)(a) [sic][4] and (3) of the [HRS].

(Footnote added.)

Garvis, Honolulu Police Department officers Darren Cachola (**Officer Cachola**) and Timothy Tenney (**Officer Tenney**), Club Electro (**Electro**) employee Scott Long (**Long**), and Garvis' girlfriend and Electro employee Gina Devine (**Devine**) testified at trial.

On March 23, 2011, Officer Cachola went to Electro in response to Devine's complaint that Electro employee Maʻilani Muna (**Muna**) was violating a protective order. Upon arrival, Officer Cachola spoke with Devine outside Electro. Officer Cachola testified that he looked for Muna inside Electro but could not find her. Devine testified that Officer Cachola did

---

[2](...continued)
(3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

[3] Garvis was charged with and acquitted of assault against a law enforcement officer in the first degree in violation of HRS § 707-712.5(1)(a) (Supp. 2013).

[4] The charging language of Garvis' indictment suggests that Plaintiff-Appellee State of Hawaiʻi (**State**) intended to charge Garvis under HRS § 711-1101(1)(c), not (1)(a). A person commits the offense of disorderly conduct under HRS § 711-1101(1)(a) if he, "with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, . . . [e]ngages in fighting or threatening, or in violent or tumultuous behavior[.]"

not go inside Electro. Officer Cachola testified that he intended "to initiate a protective order violation[,]" but did not because after exiting Electro he "was distracted by [Garvis] making a commotion" in the Electro parking lot.

Officer Cachola testified that Garvis was "visibly and vocally upset" because he thought Officer Cachola was not going to initiate a report. Officer Cachola testified that he told Garvis he planned to initiate a report, but that Garvis remained upset and was "saying obscenities." Soon thereafter, Kiana, a co-owner of Electro, came out of the club.

Devine testified that Kiana came out of Electro "kind of yelling at me" and that she and Kiana argued. Garvis testified that when Kiana came out of Electro, she talked to Devine and then walked over to Garvis and yelled at him from three feet away and that they argued "back and forth couple times" until Officer Cachola asked Kiana if Garvis was not allowed on her property. Garvis admitted to using "'F' bombs" while arguing with Officer Cachola. Officer Cachola testified that Kiana was upset with Garvis for "being loud and saying obscenities" and told him that he was not allowed on her property and to leave the property. Officer Cachola also testified that Officer Tenney arrived on the scene at the time Officer Cachola told Garvis to leave the property. Garvis left the parking lot and stood on the sidewalk.

Officer Cachola testified that from the sidewalk, Garvis continued "yelling and screaming obscenities, he's getting more upset, . . . he's getting more and more people to pay attention of his actions." When asked what types of obscenities, Officer Cachola testified "[i]t was mostly fuck . . . directed toward Kiana. But a lot of the yelling was towards me . . . ." Officer Cachola testified that he told Garvis "calm down at least three times" and twice told Garvis that he would "be arrested for disorderly conduct" "if he keeps it up." Officer Cachola testified that he then told Garvis that he was under arrest for disorderly conduct and tried to cuff Garvis, but that Garvis resisted, they fell to the ground, Garvis punched him in the face, and others, including Devine and Garvis' son, also started

hitting him. Officer Cachola testified that Long and Officer Tenney helped stop the fight and that he went to Pali Momi hospital's emergency room for treatment of minor injuries.

Devine testified that while Garvis was on the sidewalk, Kiana and Devine continued to argue and the arguing provoked Garvis to yell at Kiana from the sidewalk. Devine also testified that Officer Cachola did not like Garvis yelling at Kiana, and that Officer Cachola walked over to Garvis and pushed his left forearm up against Garvis' throat. Devine testified that she ran over and yelled "stop" and that Officer Cachola grabbed her hair and pulled her to the ground, but was shocked when he realized she was the person that he pulled to the ground. Devine testified that soon after that someone pulled them apart and she was cuffed and put in the police car. Devine also testified that she "never touch Cachola" and that nobody hit her.

Garvis testified that once on the sidewalk, he "wasn't saying anything" "for about five minutes" because Kiana had left, but that once she returned, she was yelling at and harassing Devine, so Garvis yelled at Kiana from the sidewalk and "might have said leave her the 'F' alone" because he "was very upset at that point." Garvis testified that Officer Cachola "was at his car closer to the front door" and did not tell Garvis to stop yelling, but that Officer Tenney told Garvis to calm down.

Garvis testified that he spoke with Officer Tenney for "15 seconds or 10 or less" before Officer Cachola quickly walked up to Garvis and said "I thought I told you to leave the property?" Garvis testified that he responded that he "did leave the property" because he was on the sidewalk, and that Officer Cachola then "[s]pontaneously" used his left forearm to violently strike Garvis in the throat and then put Garvis in a "full chokehold." Garvis testified that he could not breathe and fell down, landed with his face on the concrete, and that Officer Cachola got on top of him and had him "in a death grip." Garvis testified that he "was losing consciousness" and "struggling for air." Garvis further testified that he was suddenly freed and "was seeing stars" and then saw Officer Tenney "pointing a Taser" at him and four or five people on the ground. Garvis testified

that he then got down on the ground on his belly and Officer Tenney cuffed him, and that at no time did he "take a swing" or "throw a punch" at Officer Cachola.

Long testified that he observed Garvis yelling and swearing at Kiana from the sidewalk, but was paying more attention to Kiana and Devine's argument about Kiana's decision to fire Devine for calling the police. Long said he stepped back into Electro when Officer Cachola said he was going to talk to Garvis. Long further testified that when he stepped back outside, Officer Cachola was trying to grab Garvis, Garvis was resisting, and they "went down to the ground" and were "like wrestling." Long testified that Garvis' son jumped on Officer Cachola's back to try to pull him off of Garvis, Long jumped on Garvis' son "to try to get him off of Officer Cachola[,]" another one of Garvis' sons jumped on Long's back, and then Garvis got free, stood up, and punched Officer Cachola, who was on his hands and knees, in the face, and tried to punch him in the body, and then was cuffed by Officer Tenney. Long testified that he did not observe Officer Cachola strike anyone. Long also testified that he knew Officer Cachola as an officer that responded to 911 calls when "things get out of hand" at Electro, and also as a customer because he came to the bar "a couple times" when he was off duty to drink and hang out with his wife. Long further testified that he did not mention Garvis punching Officer Cachola in his "HPD 252" statement even though he knew that the purpose of the statement was to support a charge of assault on Officer Cachola.

Officer Tenney testified that he did not see the patrons who were leaving the bar react to Garvis' yelling and swearing. Officer Tenney also testified that he saw Garvis take a swing at Officer Cachola when Officer Cachola told Garvis that he was going to be arrested for disorderly conduct, but that Officer Cachola got "out of the way of that one" and that the two men fell to the ground and wrestled. Officer Tenney further testified that once the two men were separated, both were standing and Garvis took another swing at Officer Cachola and

this time hit him in the face, and then Officer Tenney threatened Garvis with the Taser and Garvis complied and was arrested.

While giving his closing argument, the prosecutor stated:

> Garvis is also charged with disorderly conduct. There are three elements to this charge.
>
> . . . .
>
> The second element is that he acted with intent to cause physical inconvenience or alarm by a member or members of the public or recklessly creating a risk thereof. Well, the fact that what [Garvis] is yelling, the obscenities, that they can be heard from 30 or 40 feet away, that they're directed to Kiana satisfies this element of creating alarm. And it's [Garvis] -- he told you that he wanted Kiana to hear him. He wasn't just saying this out loud. He wanted Kiana to hear him, hear that he was upset. He wanted her to know that he was not happy with what was going on.

(Emphasis added.)

The jury found Garvis guilty of disorderly conduct on June 17, 2013.

## II.  STANDARDS OF REVIEW

### A.  Sufficiency of Complaint

Whether or not an indictment or complaint sets forth all the essential elements of a charged offense and thus provides sufficient notice to a defendant is a question of law and therefore is reviewed under the de novo, or right/wrong, standard. State v. Codiamat, 131 Hawai'i 220, 223, 317 P.3d 664, 667 (2013) (citing State v. Merino, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996)). See also State v. Walker, 126 Hawai'i 475, 485, 273 P.3d 1161, 1171 (2012); State v. Young, 107 Hawai'i 36, 39, 109 P.3d 677, 680 (2005).

### B.  Sufficiency of Evidence

The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

6

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)).

"'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawai'i at 33, 960 P.2d at 1241 (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Garvis had sufficient notice of the offense charged.

Garvis argues that the circuit court did not have subject matter jurisdiction over this case because Garvis was charged with disorderly conduct in the disjunctive rather than the conjunctive and therefore did not have proper notice of the alleged offense. Garvis argues that State v. Jendrusch, 58 Haw. 279, 282 n.4, 567 P.2d 1242, 1245 n.4 (1977) requires this court to vacate the circuit court's Judgment and dismiss the case "for the State's failure to sufficiently allege an offense and lack of [jurisdiction] . . . ."

The State argues that Garvis had proper notice of the offense charged because under Codiamat, 131 Hawai'i at 227, 317 P.3d at 671, a charge worded in the disjunctive does not violate the Jendrusch rule when it charges the defendant with violating only one subsection of a statute. The State is correct.

HRS § 711-1101 provides, in pertinent part:

> **§711-1101 Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
>
> (a) Engages in fighting or threatening, or in violent or tumultuous behavior; or
>
> (b) Makes unreasonable noise; or
>
> (c) Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response; or
>
> (d) Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or

7

> (e)    Impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any place open to the public.
>
>    . . . .
>
> (3)   Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist.  Otherwise disorderly conduct is a violation.

In <u>Jendrusch</u>, the State used the following language to charge Jendrusch with disorderly conduct:

> You (Jendrusch) are hereby charged that in the City and County of Honolulu, State of Hawai'i, on or about the 14th day of September, 1974, with intent to cause <u>public inconvenience, annoyance or alarm</u> by members of the public or recklessly creating a risk thereof, you did make <u>unreasonable noise or offensively coarse utterance, gesture or display or address abusive language to any person present</u>, thereby committing the offense of Disorderly Conduct in violation of Section 1101(1)(b) of the Hawai'i Penal Code.

58 Haw. at 280, 567 P.2d at 1243-44 (emphases added).

First, the <u>Jendrusch</u> court noted that "[t]he complaint here purports to charge an offense under HRS § 711-1101(1)(b) (making unreasonable noise). However, the operative factual allegations charge the defendant with having engaged in activities violative of subsections (1)(b) and (1)(c) of the statute." <u>Id.</u> at 281, 567 P.2d at 1244.

The <u>Jendrusch</u> court then held that the charge against Jendrusch was "fatally defective" for three reasons:  (1) the State charged Jendrusch with "public inconvenience, annoyance or alarm" rather than "physical" inconvenience or alarm (<u>id.</u> at 281-82, 567 P.2d at 1244); (2) with regard to subsection (1)(c), the State failed to charge Jendrusch with behavior or language that is "likely to provoke a violent response" (<u>id.</u> at 282, 567 P.2d at 1245); and (3) the State charged Jendrusch with violating the statute in one count that was worded in the disjunctive and included two ways to violate the statute that were not factually synonymous.  <u>Id.</u> at 282 n.4, 567 P.2d at 1245 n.4 ("Where a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive.").

Jendrusch is inapposite to the instant case because, in this case, the State used charging language that is nearly identical to the statute and charged Garvis under only one subsection of the statute, HRS § 711-1101 (1)(c),[5] and "offensively coarse behavior" and "abusive language" are analogous forms of conduct. See Codiamat, 131 Hawai'i at 227, 317 P.3d at 671 (holding that "acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute"). Garvis' argument that the charge is defective for being worded in the disjunctive is without merit.

**B.    Garvis' conviction was not supported by substantial evidence.**

Garvis argues that the circuit court's Judgment must be reversed because Garvis' conviction was not supported by substantial evidence. Garvis contends the State failed to prove that he "acted with the intent to cause physical inconvenience to, or alarm by, a member or members of the public, or . . . with reckless disregard that his conduct might produce such a result" because Garvis' frustrations were not likely to physically inconvenience or alarm any member of the public under State v. Faulkner, 64 Haw. 101, 104-05, 637 P.2d 770, 773-74 (1981); and Officer Cachola and Kiana are not members of the public under State v. Leung, 79 Hawai'i 538, 544, 904 P.2d 552, 558 (1995).

The State argues there was sufficient credible evidence to support Garvis' conviction because "the evidence revealing the duration, location, time and other circumstances of [Garvis'] persistent obscenity-laced tirade [] ended with Officer Cachola, as well as [Long], being attacked by a member or members of the public."

Members of the public are not "physically inconvenienced or alarmed within the meaning of [HRS § 711-1101(1)]" merely because they pay attention to a situation involving a defendant and a police officer. Faulkner, 64 Haw. at

_____

[5]    As noted supra at 2 n.4, Garvis' indictment included a typo in that Garvis was charged with conduct described by HRS § 711-1101(c), but the April 12, 2011 Indictment charged Garvis with violating HRS § 711-1101(a). Garvis' arguments on appeal do not discuss this typo.

105, 637 P.2d at 774. Neither a police officer nor a person with whom a defendant engages in an argument with is a "member of the public" within the meaning of HRS § 711-1101(1). Leung, 79 Hawai'i at 545, 904 P.2d at 559 (holding that the State did not have "an adequate basis for a charge under HRS § 711-1101" because the evidence "indicated that all of Defendant's statements pertained to Defendant's belief that he was being unjustly detained and that the alleged profanity was aimed only at the officers and the manager, not at the public or any member of the public generally").

The State did not produce substantial evidence that Garvis' conduct had the effect of or was likely to have the effect of causing any member of the public to experience physical inconvenience or alarm. Officer Cachola and Kiana do not constitute members of the public, and the evidence does not indicate that any of the people in the Electro parking lot were physically inconvenienced or alarmed by Garvis' yelling and swearing at Kiana and Officer Cachola or that Garvis had the intent to cause such a result or that such a result was likely to occur. See Leung, 79 Hawai'i at 543-45, 904 P.2d at 557-59 (holding that a defendant did not commit disorderly conduct when theater patrons paid attention to him yelling obscenities at the theater manager and police officers over what he believed to be an unjustified detention in the theater lobby); Faulkner, 64 Haw. at 104-05, 637 P.2d at 773-74 (holding that a defendant did not commit disorderly conduct when pedestrians and motorists in the vicinity paid attention to the defendant arguing with a police officer in the zoo parking lot over what he believed to be an improper investigation of his complaint).[6]

---

[6] Both Faulkner and Leung suggest that Garvis' conduct directed towards Kiana and Officer Cachola could support charges of harassment under HRS § 711-1106 (Supp. 2013). See Faulkner, 64 Haw. at 105, 637 P.2d at 774 ("Belligerency, when combined with persistently outrageous and abusive conduct, which unreasonably interferes with an officer's performance of his official duties, may supply the basis for a charge of harassment under HRS § 711-1106."); Leung, 79 Hawai'i at 544, 904 P.2d at 558 (holding that Leung's conduct directed towards the theater manager and the police could "constitute a possible charge under HRS § 711-1106"); see also HRS § 711-1106(1) ("A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person[.[ . . . ." (emphasis added)).

10

## IV.   CONCLUSION

The June 17, 2013 "Judgment of Conviction and Sentence" entered in the Circuit Court of the First Circuit is reversed.

DATED:   Honolulu, Hawai'i, January 13, 2015.

On the briefs:

Klemen Urbanc
(Urbanc Willard Park & Kim)
for Defendant-Appellant.

Donn Fudo
Deputy Prosecuting Attorney
City And County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11